HYMAN B. STONE AND GOLDE STONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36679. Filed July 14, 1954.

*Christopher Del Sesto, Esq.*, and *Edward V. Healey, Jr., Esq.*, for the petitioners.

*James R. McGowan, Esq.*, for the respondent.

898

900

OPINION.

TIETJENS, *Judge:* We will first dispose of the contention made in a separate brief by petitioner Golde Stone. She argues that the respondent's determinations are invalid as against her since she did not sign a return for any of the taxable years and that she did not take part in her husband's businesses.

It is not essential that a return be signed by both spouses to be a joint return. *Kann* v. *Commissioner*, (C. A. 3, 1953) 210 F. 2d 247, affirming 18 T. C. 1032, certiorari denied 347 U. S. 967; *Myrna S. Howell*, 10 T. C. 859 (1948), affd. (C. A. 6, 1949) 175 F. 2d 240; *Joseph Carroro*, 29 B. T. A. 646. The issue depends upon the intent of the taxpayers when they omitted to file a return for 1943 and at the times the returns for 1944 and 1945 were filed.

Hyman and Golde Stone signed a joint return for 1942 and two joint declarations of estimated tax for 1943. Their failure to file a return for 1943 is explained as due to confusion about the new system of tax collection then inaugurated and they imply that they believed the joint estimates were all that was required of them. Manifestly their intention was to file a joint return. The returns filed for 1944 and 1945 gave the names of "Hyman B. and Golde Stone" as the taxpayers and included items of income from rentals which it is now contended were Golde's income. She contributed indirectly to earning the business income, for her husband used her property at 125 Manton Avenue for his market rent free. She has never filed a separate return for any of these years reporting separate income; and, if the 1944 and 1945 returns were not hers, she is delinquent as to those years as well as to 1943. The respondent determined that these taxpayers were jointly liable for the deficiencies for 1943, 1944, and 1945. The burden is upon them to show error in this determination. Hyman Stone did not testify as to 1943, his counsel restricting his testimony to matters concerning the years 1944 and 1945. Golde Stone did not testify at all. There was no evidence to rebut the presumption that the respondent's determination as to joint liability for 1943 was correct. See *Joseph Calafato*, 42 B. T. A. 881 (1940), affd. (C. A. 3, 1941) 124 F. 2d 187. Nor was any evidence presented to show that Golde Stone regarded the returns for 1944 and 1945 as unauthorized joint returns. The taxpayers believed these returns had been signed by both of them until at the hearing of the case it was disclosed that Golde's signature was lacking. Then, for the first time, it was contended that they were not joint returns. The respondent accepted these returns as joint and determined that the taxpayers were jointly liable for the deficiencies for 1944 and 1945. The taxpayers have not shown that they did not intend these as joint returns. We conclude that the taxpayers filed joint returns for 1944 and 1945 and that they are jointly liable for any deficiency and additions to the tax for 1943 as well.

The deficiency for 1943 was determined upon the net worth basis. Upon investigation, the respondent's agent was unable to find the taxpayers' books and records for that year. The taxpayers did not produce such records and asserted that the records were lost except for canceled checks and bank statements which were produced. The agent made two computations of the taxpayers' income for 1943, one on the basis of their increase in net worth plus living expenses, and the other on the basis of records procured from banks and other sources showing the taxpayers' receipts and disbursements. The computation on the receipts and disbursements basis was reconcilable with the net worth computation. The deficiency was based upon a taxable net income of $28,324.20 as computed on the net worth increase basis,

which computation resulted in the lesser tax. The tax was computed at $12,161.34. The estimated tax on the last estimate filed was $1,461.28 upon the basis of an estimated income of $7,000. The respondent determined additions to the tax of 50 per cent for fraud and 25 per cent for failure to file a return.

The petitioners complain that the deficiency notice did not afford them enough information as to the respondent's position to enable them fully to prepare their case. The notice showed the net income attributed to the petitioners for each year and the amount of tax determined to be due. The respondent's answer to the petition stated that income attributed to the petitioners for 1943 was computed on the net worth basis. The adjustments for 1944 and 1945 were stated in the deficiency notice to constitute unreported business income and unreported meat subsidies. The loss of the records for 1943 may have been a handicap to the petitioners, but the respondent's investigation was painstaking and the petitioners admit the correctness of most items of the net worth increase determined. The petitioners made no attempt to invoke Rule 18 of this Court to require a better statement of the nature of the claim or defense. Nor did the petitioners testify as to the income for 1943. They do not suggest that they might have presented other evidence had the respondent's proof been disclosed to them earlier.

The respondent's computation of the net worth increase of the petitioners for 1943 shows a net increase in assets of $10,827.55 and a decrease in liabilities of $10,502, a total of $21,329.55. Most of the bank balances were increased and mortgages and loans were largely paid off. To this were added $1,040 used for living expenses estimated at $20 per week upon the basis of Stone's statement that he gave his wife $20 to $25 per week for living expenses, and $5,954.65 in checks drawn by Stone which appeared to be for personal use, making a taxable income of $28,324.20. The petitioners present various computations to point out errors in that of the respondent. The computations relating to the joint net worth of the petitioners are in most items identical with the respondent's figures, but show the following differences which we now resolve.

(1) The joint account of Stone and his son, Jacob, which the respondent treated as an asset of the petitioners represented an asset of Jacob from which Stone had borrowed and was obligated to repay. This has now been stipulated. The net income is not affected by this difference.

(2) It is shown by the evidence, and we have found, that Stone had a bank account in the Bank of Nova Scotia with a balance of $95.28 on January 1, and of $11.94 on December 31, 1943. Apparently the respondent does not contest this.

(3) The petitioners show as a note receivable on January 1, 1943, an amount of $203.03. This apparently represents a note Stone accepted in 1942 in payment for a sale of cattle and which he discounted at his bank in 1942. This note was paid in 1943 apparently by the maker. Since Stone had the cash for the item prior to 1943 the note was not an asset of his on January 1 of that year. On the other hand, the respondent treats it as a liability on January 1 which was reduced during the year. Stone's liability was indirect, as he endorsed the note in discounting it. Hence, this should not be treated as a liability at the beginning of the year or as having been reduced during 1943.

(4) The petitioners allege that there were accounts receivable in the amount of $10,186 on January 1, 1943, and $1,538 on December 31, 1943. Stone had no records of these accounts. We have found that Helen S. Franklin owed $1,725 at the beginning of 1943 and $134.50 at the end of the year. There were no records of the other accounts, but testimony of witnesses was given as to them. The accounts arose upon sales of cattle by Stone. The witnesses who testified were attempting to recall amounts owing at a date nearly 10 years prior to the hearing. The testimony was vague, and sometimes contradictory. Except for the debt due from Helen S. Franklin we have concluded that the evidence is not sufficient to support a finding that any of these amounts were owing to Stone on the dates given. We deem it unnecessary to discuss this testimony in detail.

Except for the minor corrections noted in the preceding paragraphs, the evidence presented by the petitioners fails to show error in the respondent's determination of their taxable income for 1943. Adjustment for the items described may be made in a computation under Rule 50.

The respondent asserted the 25 per cent addition to the tax provided in section 291 (a) of the Internal Revenue Code for failure, without reasonable cause, to file a return for 1943. The petitioners contend that they were confused as to the required returns at the inauguration of the new system of collecting taxes by withholding and declarations of estimate and thought they had complied with all the requirements in filing the last estimate in December 1943. They further contend, on brief, that they depended on Press to take care of their income tax requirements. Press testified that he suggested the filing of the December estimate so the amounts paid pursuant to the estimates would be more in line with the "tax bill that would come up for 1943." The check prepared by Press showed that it was in payment of "Estimated Tax." Press did not prepare a 1943 return for the petitioners and apparently did not consider it his responsibility. The petitioners neglected to see that a return for the year was filed. Even if we assume that petitioners relied upon Press to prepare their return for

1943, such reliance upon an agent does not constitute reasonable cause for delinquency. *Malcolm Clifton Davenport*, 6 T. C. 62; *Berlin* v. *Commissioner*, (C. A. 2, 1932) 59 F. 2d 996, affirming a Memorandum Opinion of this Court. We are not convinced that there was reasonable cause for the failure to file a return for 1943.

The burden is upon the respondent to prove that the deficiency for 1943 is, at least in some part, due to fraud with intent to evade tax. Sec. 1112, I. R. C. It is shown that the petitioners estimated their income at $7,000 and tax at $1,461.28 in December of 1943, whereas their income was over $26,000 and their tax over $11,000. While a gross understatement is strong evidence of fraud, *Rogers* v. *Commissioner*, (C. A. 6, 1940) 111 F. 2d 987; *Halle* v. *Commissioner*, 175 F. 2d 500, affirming 7 T. C. 245, certiorari denied 338 U. S. 949, this fact alone and with reference to a single tax year does not convince us that there was fraud with intent to evade tax in this instance.

The deficiencies for 1944 and 1945 were computed on a different basis. The respondent's agent was unable to verify the sales reported on the returns, but was able from the bank checks to ascertain purchases and expenses. He computed the percentage of gross business profit over cost of goods sold in 1943 from the meat market and the dairy cow businesses combined, which he found to be 40.2 per cent, and applied it to the cost of goods sold as computed for 1944 and 1945. The subsidy checks received were added to the income thus computed. As finally determined by the respondent the adjusted net income for 1944 was $35,820.19 and the adjusted gross income for 1945 was $40,493. For comparison, the net income shown on the returns was $5,143.88 for 1944 and $8,221.90 for 1945. The deficiencies were determined on the basis of the income computed by the respondent.

The petitioners have the burden of proving error in these determinations. They assert that the respondent's action is arbitrary and unreasonable and therefore is invalid and that under the rationale of *Helvering* v. *Taylor*, 293 U. S. 507 (1935), they are not obliged to prove the correct tax. They say that the returns fully and correctly reported their income. They refer to testimony of the revenue agent, that he made a net worth computation but did not rely upon it as the results were "out of line" with the determination for 1943, as showing that the computation by means of the profit markup was unreasonable and arbitrary.

The agent found that the deposits to the checking accounts greatly exceeded the sales reported. This was attributable to Stone's practice of cashing payroll checks for customers and others and depositing these checks in his accounts. But it had the effect of making the computation of sales difficult, if not impossible. The agent found that in

a number of instances when a deposit was made a part of the amount taken to the bank was withdrawn in cash and could not be traced. With one exception, the subsidy checks received in those years by Stone did not appear on his books and the agent could not trace them. The agent was unable to ascertain which deposits represented sales or receipts and which did not. Stone's bookkeeper said that he treated deposits as sales, but the sales reported in the tax returns were considerably less than the deposits. The bookkeeper maintained no record of store sales. There was no detailed record of the dairy cattle part of Stone's business. There was no record at all for 1944 and merely a summary of total sales, costs, and farm rent for 1945. In the 1944 return Stone's bookkeeper made an estimate of the profit from cattle sales based upon the difference in the opening and closing balances of the account used in that business. Although the bookkeeper said he maintained detailed records of the cattle sales, there were no records from which the agent could verify this or the summary which appeared in the 1945 return. The method used by the bookkeeper in computing this income in the 1944 return was not sound, as Stone transferred money from one account to another as it became needed and the difference in balances would thereby be affected. The agent could not make a reliable receipts and expenditures statement because the cash receipts could not always be traced. Although it developed at the hearing that most of the subsidy checks received in 1944 and all those received in 1945 were deposited in Stone's bank accounts, this would not affect the method of computation used.

Where a taxpayer's records are inadequate to permit verification of the returns or if the records are unreliable the respondent may determine income by other reasonable means. A net worth computation was made here but was not adopted by the respondent. The increase in net worth shown thereby bore no similarity to the increase which certainly occurred in 1943 and the respondent may have considered the net worth increase method unreliable because of the possibility that assets were concealed. The manner in which the records were kept facilitated concealment of income because the amount of sales was not shown. The cost of goods sold could be ascertained. In this situation it was a reasonable method to compute the business profit upon the assumption that Stone realized the same rate of profit on his business as in 1943, the preceding year. The petitioners have not produced persuasive proof that the business profit for 1944 and 1945 was substantially less, either in amount or in percentage of profit, than that resulting in 1943. We do not find this computation excessive and without rational foundation within the meaning of *Helvering* v. *Taylor*, *supra*. However, the adjustments we have made or approved as to 1943 would have the effect of reducing the markup ratio used.

We have therefore recomputed the income on the basis of a lesser markup. The income as recomputed is shown in our Findings of Fact. The deficiencies are to be recomputed under Rule 50.

The respondent asserted the 5 per cent addition to the tax provided by section 293 (a) of the Code for negligence or intentional disregard of rules and regulations with reference to the years 1944 and 1945. The taxpayers relied upon their bookkeeper to keep the records and prepare their returns for these years. While Stone may have had little knowledge of bookkeeping he was negligent in failing to have his bookkeeper maintain adequate records and to furnish the bookkeeper with correct figures as to the volume of sales. The taxpayers must bear the responsibility for their agent's failure. We think the circumstances warrant imposition of this addition to the tax. This addition is subject to recomputation.

*Decision will be entered under Rule 50.*