Estate of Alfred E. Whitehouse, Mildred Hazel Whitehouse, as Administratrix, and Mildred Hazel Whitehouse, Individually v. Commissioner.
Estate of Whitehouse v. Commissioner
Docket No. 11171.
United States Tax Court
T.C. Memo 1955-135; 1955 Tax Ct. Memo LEXIS 206; 14 T.C.M. (CCH) 501; T.C.M. (RIA) 55135; May 24, 1955
*206 Final return for 1943, although not signed by wife but containing all the income and taking all the deductions of the marital community, held a joint return of husband and wife. Robert Sterling, Esq., and Irving L. Innerfield, Esq., for the petitioners. John J. Madden, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Mildred Hazel Whitehouse, hereinafter referred to as petitioner, is before the Court in this proceeding in her individual capacity and also in her representative capacity as administratrix of the estate of her husband, Alfred E. Whitehouse. Two years, 1941 and 1943, are involved. A stipulation removes the year 1941 *207 from controversy. The Estate of Alfred E. Whitehouse admits its liability for a deficiency in income tax in the amount of $19,177.80 for the year 1943. The only controverted issue remaining is whether the petitioner is liable in her individual capacity for the same deficiency of $19,177.80. The answer to this question depends on whether she and her husband filed a joint return for 1943. Most of the facts have been stipulated and the stipulation is hereby adopted. Findings of Fact The petitioner, Mildred Hazel Whitehouse, also known as Hazel Whitehouse, is the widow of Alfred E. Whitehouse, and is the duly appointed, qualified and acting administratrix of his estate. Alfred Whitehouse died, a resident of the State of New Jersey, on February 2, 1946. The petitioner was his wife during the taxable years 1942 and 1943. For the calendar years 1940 and 1941, income tax returns were filed in the names of "Alfred E. and Hazel Whitehouse" with the collector of internal revenue for the second district of New York. The return for 1940 was signed by both individuals; the return for 1941 was signed only by Alfred. For the calendar years 1942 and 1943, income tax returns were filed in *208 the names of "Alfred E. & Hazel Whitehouse" with the collector of internal revenue for the second district of New York. Both returns were signed only by Alfred and both were prepared on the cash receipts and disbursements method of accounting. For the calendar year 1943, a Declaration of Estimated Income and Victory Tax, Form 1040-ES, was filed in the names of "Alfred E. and Hazel Whitehouse" and was signed by both. On all of the foregoing income tax returns exemptions were claimed for a married couple living together. In the return for the year 1942 bearing the names "Alfred E. & Hazel Whitehouse," the following items were attributable solely to Alfred E. Whitehouse: (a) "Salaries and other compensation for personal services" in the amount of $20,468.33 comprising salary received from Whitehouse & Pine, Inc.; (b) "Dividends" of $7.20 from 12 shares of Commercial Solvents, Inc.; (c) "Net gain from sale or exchange of capital assets" of $89,363.34 representing transactions involving stock in Whitehouse & Pine, Inc., and Fidelity Finance & Realty Company; (d) "Taxes" in the amount of $4,070.28 comprised of $3,636.21 for New York State Income Tax paid by Alfred E. Whitehouse *209 for his personal liability for 1941 New York Income Tax; and $434.07 for real estate taxes paid to the Town of Westwood, New Jersey; and (e) "Other deductions authorized by law" of $2,172.39 comprised of: Business losses of $1,092.39 and selling and entertaining expenses of $1,080. In the return for the year 1943, bearing the names "Alfred E. & Hazel Whitehouse," the following items were attributable solely to Alfred E. Whitehouse: (a) "Interest" in the amount of $115.20; (b) "Taxes" in the amount of $885.20 comprised of $129.36 for real estate taxes paid to the Town of Westwood, New Jersey and $755.84 for New York State Income Tax paid by Alfred Whitehouse for his personal liability for 1942. During 1942 and 1943, Hazel Whitehouse owned real estate in Quogue, Long Island, New York. On returns for these years, bearing the names "Alfred E. and Hazel Whitehouse," deductions for taxes paid on this property were taken. The amount $236.33 was deducted in 1942 and $234.32 was deducted in 1943. On April 27, 1943, a securities account was opened with Ward, Gruver & Co., brokers, in the name of Hazel Whitehouse. On the same date, Hazel executed a power of attorney in favor of Alfred *210 giving him full trading authorization with respect to the Ward, Gruver account, including authority to withdraw money or securities. The $20,000 initially deposited in the account came from A. E. Whitehouse & Co., Inc., in which Hazel had no stock interest or ownership. In the return for the year 1943 bearing the names "Alfred E. & Hazel Whitehouse," most of the amount reported as income from dividends and gain from sale or exchange of capital assets is attributable to the securities in the Ward, Gruver account in the name of Hazel Whitehouse. A return for the year 1944 was filed bearing only the name "Alfred E. Whitehouse." In that return, $605 in income was reported comprised of $74.48 attributable to Alfred E. Whitehouse and $530.52 in dividends derived from the securities in the Ward, Gruver account in the name of Hazel Whitehouse. A net capital gain of $281.35 reported in the return was attributable to the sale of "100 Baldwin" and "100 N. Y. Central" securities in the Ward, Gruver account in Hazel's name. The total amount of charitable contributions taken as a deduction in the 1944 return ( $47) and the total amount of the medical and dental expenses shown ($1,809.73) were *211 paid by Alfred E. Whitehouse in 1944. Real estate taxes in the amount of $671.15 were also deducted on the 1944 return. Of this amount, $221.09 represented taxes on the Quogue, Long Island, property owned by Hazel, and $450.06 on the Westwood, New Jersey, property. In each case, the taxes were paid by Alfred Whitehouse. On November 30, 1945, Hazel revoked the power of attorney previously given Alfred and, on December 3, 1945, she executed a new power of attorney in favor of her son William giving him full trading authority with respect to the Ward, Gruver account such as had been held by her husband. On the death of Alfred, the securities in the Ward, Gruver account in Hazel's name were recognized as her property and were not included in his estate. On the Federal estate tax return of Alfred Whitehouse, deceased, no securities were listed as owned by him at the time of his death. In Schedule G of Form 706 (and the corresponding section of the New Jersey inheritance tax return) the following note appears: "Decedent during his lifetime made certain transfers of property, exclusive of the insurance trust of January 30, 1946. The Administratrix has acted with due diligence but has *212 been unable to determine the exact nature, amount, and extent of includibility of such transfers in decedent's gross estate. It is estimated that such transfers, whether includible or not, do not exceed in any event a total of $100,000." Judgment was entered by the New Jersey Title & Guarantee Trust Company of New Jersey against co-defendants Alfred E. Whitehouse and 194 Wright Street Corporation on May 29, 1933, for $160,539.67, and this amount was still unpaid, with interest accrued, during the years 1942 and 1943. There is a deficiency in Federal income tax due from the petitioner, Estate of Alfred E. Whitehouse-Mildred Hazel Whitehouse, as Administratrix, for the taxable year 1941, in the amount of $13,092.87, plus statutory interest. Effective upon entry of decision, petitioners waive the restrictions contained in the Internal Revenue Code on the assessment and collection of the deficiencies, plus statutory interest. It has been stipulated that, if there is joint liability of the Estate of Alfred E. Whitehouse and Mildred Hazel Whitehouse under the returns filed for both the taxable years 1942 and 1943, the deficiency in Federal income tax due from the petitioners is $19,177.80, *213 plus statutory interest; but, if there is no such joint liability of the estate and Mildred Hazel Whitehouse, the deficiency in Federal income tax due from the Estate of Alfred E. Whitehouse is $19,177.80, plus adjustment for the item of Quogue real estate tax improperly deducted by Alfred E. Whitehouse. The income tax returns filed for the taxable years 1942 and 1943 in the names of "Alfred E. & Hazel Whitehouse" were intended as joint returns. Opinion ARUNDELL, Judge: The question here is whether the petitioner [1] and her husband filed a joint return for the year 1943. If they did, then the petitioner is liable for the admitted deficiency in her husband's income taxes for that year. [2]
*214 A final return for 1943 was filed, baring the names of petitioner and her husband. It was signed only by him. A declaration of estimated income tax was filed at the beginning of the year, signed by both. On this record there is no indication that the petitioner filed a separate, final return for the year. In the final return, a deduction was taken for real property taxes on real estate owned by the petitioner. Also, the full personal exemption for a married couple, living together, was taken. [3]
*215 The source and ownership of the income reported on the 1943 return are of considerable importance to the positions of both sides. Most of the income reported on the 1943 return came from dividends and gain from the sale or exchange of securities in a brokerage account in the petitioner's name. The respondent contends that the securities were owned by the petitioner and that the income from the securities and the gain from their sale were her income. Thus, the respondent contends that a return which included petitioner's income and also the deductions to which she was entitled, together with the income and deductions to which her husband was entitled, must have been intended as a joint return by the couple. The petitioner contends that she did not own the securities in the brokerage account in 1943. She claims that during this year she was merely the nominee of her husband and that he actually owned the securities but had them placed in her name because he was a judgment debtor. Thus, the petitioner argues that the income from the securities and the gain from the sale of the securities was not hers and therefore the inclusion of these items in the return for 1943 was indicative *216 only of the fact that the return contained all of her husband's income for that year. There is no dispute about the basic facts. The securities were in the petitioner's name. However, the money with which they were purchased came from her husband's company in which she had no interest. All the transactions in the account were handled by her husband under a broad power of attorney and she appears to have had nothing to do with the selection of the securities which went into the account or any concern with the management of the account or with the income from the securities in the account. However, when her husband died three years later, the securities in the brokerage account were not included in his gross estate. At this time, petitioner claimed that the securities were hers and no longer her husband's property. The event which she now claims changed the ownership of the securities occurred late in 1945, two months prior to her husband's death and during his last illness. She revoked the power of attorney which authorized her husband's unrestricted trading in the account bearing her name and executed a similarly broad power in favor of her son. The petitioner argues that by this *217 act the securities became hers. The petitioner's reasoning is as follows: Her husband had full control over his own funds which were used to establish the brokerage account. Also, he was the family business manager, and she complied with his directions by signing whatever documents he presented to her from time to time. That is why she signed the first power of attorney in 1943 in favor of her husband. She claims she did not know the nature of the document but that she did know of the account, although she never knew what it contained. She claims that, as of this date, she was merely her husband's nominee with respect to the account. However, she claims that her status changed in December 1945 when the new power of attorney was executed in favor of her son. It is claimed that her husband transferred ownership of the account to her "by his act of giving up the power of attorney just prior to his death." To summarize, we have a return, for a year for which the petitioner filed no individual return, which contains deductions concededly attributable to her and income from securities in her name but which she claims do not belong to her. The crux of the case is in the determination *218 of the ownership of the securities in 1943. We think that from all the evidence in the record it must be concluded that the petitioner owned the securities in the brokerage in 1943 and that the income from these securities and the gain from their sale was her income. Insofar as income from these securities was reported on the return, it was her income. We do not agree that the securities did not become hers until some subsequent year when she revoked the power of attorney in favor of her husband. Such an act is more consistent with ownership prior to its occurrence than after the event. Consequently, we do not think that the revocation of the power of attorney marked the end of her husband's ownership of the securities; rather, it is more demonstrative of the petitioner's continuous and existing ownership. The Commissioner's determination in cases of this kind as to whether the return is a joint return is presumptively correct. Myrna S. Howell, 10 T.C. 859, 866 (1948) affd. (C.A. 6) 175 Fed. (2d) 240. It is not essential that a return be signed by both spouses to be a joint return. Hyman B. Stone, 22 T.C. 893, 900 (1954), appeal pending. *219 The determination depends upon the intention of the parties, which is a question of fact to be decided by other factors if it is not apparent from the face of the return. Myrtle O. Calhoun, 23 T.C. 4, 6 (1954). And we have previously held that where a husband filed a joint return without objection of the wife, who failed to file a separate return when she had income, it will be presumed the joint return was filed with the tacit consent of the wife. Joseph Carroro, 29 B.T.A. 646, 650; W. L. Kann, 18 T.C. 1032, 1045, affd. (C.A. 3, 1953) 210 Fed. (2d) 247, certiorari denied, 347 U.S. 967 (1954). This case is somewhat like Myrna S. Howell, supra, in which the wife had income from brokerage accounts managed by her husband. Even though the husband testified that his wife was only a nominee and that the brokerage accounts were his, we concluded that a final return, not signed by the wife, which included trading losses from the accounts, was nevertheless a joint return. We think that the same conclusion obtains here in similar circumstances. From all the facts, we think that it was the intention of the petitioner *220 and her husband to file a single return for their marital community, including all the income earned by both and taking all the deductions to which they were entitled as a married couple, living together. This, we think, is the most significant conclusion that can be drawn from the record. For this reason, the returns were captioned with both names, and the taxes attributable to the realty owned by the petitioner were taken as a deduction along with the taxes on the realty in her husband's name; also, her full personal exemption was taken. Then, all the income from all sources to both was included. In this context, it really matters little whether the income from the brokerage account was petitioner's or her husband's because that distinction was not significant to them, nor is it to the statute, when the intention is to file a joint return for husband and wife. Having concluded that the final returns for 1942 and 1943 were intended as joint returns, we hold that the petitioner is liable, jointly and severally with her husband's estate, for the admitted deficiency in income taxes for 1943. Decision will be entered under Rule 50. Footnotes
1. The petitioner is here individually and also, but separately, as administratrix of the Estate of Alfred E. Whitehouse. The estate has conceded its liability for the deficiency in income taxes for 1943. Therefore, we shall refer throughout to the petitioner in her individual capacity as the wife of Alfred E. Whitehouse. ↩
2. Internal Revenue Code of 1939: SEC. 51. INDIVIDUAL RETURNS. * * *
(b) Husband and Wife. - In the case of a husband and wife living together the income of each (even though one has no gross income) may be included in a single return made by them jointly, in which case the tax shall be computed on the aggregate income, and the liability with respect to the tax shall be joint and several. No joint return may be made if either the husband or wife is a nonresident alien. ↩
3. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * * (b) * * * There shall be allowed for the purposes of the normal tax and the surtax the following credits against net income: (1) In the case of a single person or a married person not living with husband or wife, a personal exemption of $500; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $1,200. A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $1,200. If such husband and wife make separate returns, the personal exemption may be taken by either or divided between them. (Section 25(b)(1), Internal Revenue Code↩, as amended by section 131(a)(1) of the Revenue Act of 1942.).