Estate of Harold J. Ringler, Deceased, Jane R. Ringler, Executrix, et al. [1] v. Commissioner. *
Estate of Ringler v. Commissioner
Docket Nos. 51024, 51025, 51341, 51356, 51357, 51396, 51397.
United States Tax Court
T.C. Memo 1956-77; 1956 Tax Ct. Memo LEXIS 215; 15 T.C.M. (CCH) 396; T.C.M. (RIA) 56077; March 30, 1956
*215 1. Held: The returns filed for the years 1942 to 1947, inclusive, were false or fraudulent with intent to evade tax which bars the running of the statute of limitations as to those years. Held further: Respondent failed to prove that the returns filed for 1940 and 1941 were false or fraudulent, and, therefore, the assessment of the tax for those years is barred by the statute of limitations. 2. Held: At least part of the deficiency for the year 1939 and for each of the years 1942 to 1950, inclusive, was due to fraud with intent to evade tax within the meaning of section 293(b), Internal Revenue Code of 1939. 3. Held: Jane R. Ringler did not intend to file and did not in fact file a joint return with her husband in either 1948 or 1949. Claude *216 P. Herman, Esq., for the petitioners. John K. Lynch, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income (or income and victory tax) of Harold J. Ringler and Jane R. Ringler and additions to tax as follows: Harold J. Ringler
Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
293(b)
294(d)
291(a)
1939
$ 817.82
$ 408.91
$ 204.46
1940
664.02
336.41
1941
1,069.09
558.59
1942
8,487.51
4,243.76
1943 *
17,943.65
8,971.83
1944
11,441.06
5,720.53
1945
17,067.05
8,533.53
$ 2,732.15
1946
35,040.51
17,520.26
5,704.14
1947
9,780.04
4,890.02
1,636.38
Harold J and Jane R. Ringler
1948
8,028.48
4,014.24
1,284.55
1949
714.28
357.14
114.30
1950
12,667.06
6,333.84
2,026.82
Respondent determined transferee liabilities against Jane R. Ringler, Trustee for Gary L. Ringler, Minor, in the amount of $34,902.30 with respect to the above tax liabilities determined for the years 1939 to 1947, inclusive; against the Oak Leaf Trailer Park, Inc., in the amount of $42,394.39 *217 with respect to the above tax liabilities determined for the years 1939 to 1947, inclusive, and in the amount of $9,205.15 with respect to the above tax liabilities determined for the years 1948, 1949, and 1950; and against Virginia L. Ellison in the amount of $7,899.17 with respect to the above tax liabilities determined for the years 1939 to 1947, inclusive, and in the amount of $1,600.83 with respect to the above tax liabilities determined for the years 1948, 1949, and 1950. Assessment of the above tax liabilities and transferee liabilities was made under the provisions of the internal revenue laws applicable to jeopardy assessments. Harold J. Ringler died on July 24, 1954, and the Estate of Harold J. Ringler, deceased, Jane R. Ringler, Executrix, was substituted as a petitioner in these proceedings. The issues for decision are: 1. Whether the assessment and collection of the tax for the years 1940 to 1947, inclusive, is barred by the statute of limitations; 2. Whether respondent correctly determined additions to tax for fraud under section 293(b) of the Internal Revenue Code of 1939; and 3. Whether Jane R. Ringler filed a joint return with her husband for 1948 and for *218 1949. Findings of Fact The stipulated facts are so found. Harold J. Ringler (hereinafter referred to as Harold) and Jane R. Ringler (hereinafter referred to as Jane) were husband and wife and resided in Cuyahoga Falls, Ohio. Harold did not file an income tax return for the year 1939. He filed individual income (or income and victory tax) returns for the years 1940 to 1947, inclusive. In 1948 and 1949 he filed what purport to be joint income tax returns with Jane. However, the 1948 return does not purport to bear Jane's signature, and Jane's name was signed to the 1949 return by Harold's secretary without Jane's knowledge or consent. Jane did not intend to file a joint return with Harold in either 1948 or 1949, both returns were filed without her knowledge, and neither return includes any income attributable to her. Harold and Jane filed a joint return for the year 1950. All of the returns were timely filed with the collector of internal revenue for the eighteenth district of Ohio. Jane was a housewife. She had no income in 1948 and 1949 with the exception of a few minor prizes which she won by entering contests. She had some money deposited in a savings account in her maiden *219 name; but this money had been turned over to her by Harold, and she was holding this money for him. Harold caused certain mortgages and other property to be placed in Jane's name, for the most part, without her knowledge. She was being used by Harold as a "straw man," and Harold did not intend to make a gift of these mortgages and other properties to Jane. During the years involved Harold was a real estate broker in Akron, Ohio. His sources of income included real estate broker's commissions, interest on loans and mortgages, rents, profits from the construction and sale of homes, and profits from the operation of the Oak Leaf Tavern. Harold filed a voluntary petition in bankruptcy on December 14, 1934, and was granted a discharge on April 6, 1935. During the next three years Harold had difficulty carrying on his business for lack of money. During 1936, 1937, and 1938 he borrowed money frequently, giving short term mortgages on his home. During those years Jane had very little money for living expenses. Harold's net worth on December 31, 1938 was not in excess of $30,000. On December 31, 1947, Harold's net worth was at least $200,000 and on December 31, 1950 his net worth was in *220 excess of $208,000. The amount of net income reported by Harold (and in 1950 by Harold and Jane), their nondeductible living expenses, the amount of Federal income taxes paid, and the amount of the annual increase in net worth and the net income as determined by respondent is as follows: Net Worth
Net Income
Living
Increase per
Net Income
Year
Reported
Expenses
Taxes Paid
Respondent
per Respondent
1939
No return
$ 2,789.45
$ 11,390.73
$ 14,180.18
1940
$ 3,157.19 *
2,732.81
8,808.66
11,541.47
1941
2,687.97 *
2,792.03
6,784.85
9,576.88
1942
2,064.98 *
2,737.02
21,414.11
24,151.13
1943
1,862.98 *
3,687.02
$ 94.03
33,989.76
37,770.81
1944
2,364.32
3,500.00
20.88
24,079.21
27,600.09
1945
794.92
4,000.00
153.12
31,737.91
35,891.03
1946
5,102.66
4,500.00
8.85
61,603.07
66,111.92
1947
4,322.21
5,007.24
610.42
22,423.73
28,041.39
1948
(10,519.33)
4,253.96
447.34
27,078.94
31,780.24
1949
(9,020.25)
4,511.10
2,148.63
6,659.73
1950
1,707.53 **
4,871.07
37,064.23
41,935.30
Total
$ 12,631.81
$ 45,381.70
$ 1,334.64
$ 288,523.83
$ 335,240.17
*221 Among the assets of Harold and Jane on December 31 of each of the years 1938 to 1950, inclusive, were bank balances, automobiles, and real estate investments, and they had total liabilities, including reserves for depreciation, as follows: Oak Leaf
Bank
4 Apartments
Tavern
Year
Balances
Automobiles
Route 8
and Land
Residences
Liabilities
1938
$ 93.90
$ 4,350.00
$ 2,371.48
1939
805.73
$ 856.96
4,350.00
1,676.89
1940
1,394.53
959.96
4,350.00
3,118.77
1941
3,337.21
905.37
4,350.00
4,841.08
1942
7,612.85
1,632.55
4,350.00
2,309.04
1943
22,902.60
1,632.55
4,350.00
1,917.23
1944
23,695.23
3,187.85
$ 7,000.00 *
10,000.00
5,016.87
1945
24,906.26
3,187.85
9,900.00 *
10,000.00
9,055.32
1946
19,609.76
2,662.55
$ 24,084.51
33,288.29 *
10,000.00
4,399.70
1947
16,183.36
6,436.00
24,084.51
33,288.29 *
10,000.00
6,899.22
1948
14,077.00
6,436.00
24,084.51
35,388.29 *
11,701.85
11,495.77
1949
8,040.70
8,400.00
31,200.00
43,034.61 *
11,701.85
20,157.95
1950
21,599.62
8,318.40
31,200.00
47,234.61 *
13,293.42
51,631.75 **
*222 On December 31 of the years 1946, 1947, and 1948 the amounts receivable by Harold on loans to Granville Lewis were zero, $16,600, and $38,736.71, respectively. No books and records of the petitioners were retained for years prior to 1947. The only books and records were for the years 1947 to 1950, inclusive, and they consisted of the record of the operation of the Oak Leaf Tavern, mortgage cards, folders with respect to the cost of assets, and a commission book. The records did not accurately or clearly reflect income. In 1948 and 1949 Harold reported interest on mortgages in the amounts of $1,800 and $2,178, respectively; where, in fact, he earned interest on mortgages in the amounts of $2,642.28 and $3,253.29, respectively. Harold failed to report a substantial amount of interest income received from Granville Lewis in 1947 and 1948. The latter was the operator of a used car lot. Harold would lend him money to purchase cars and when the cars were resold Harold would be repaid the amount loaned plus $25, $50, or $100, depending upon the amount of the loan. In 1950 Harold realized at least $6,263.45 from the construction of houses, and he reported only $584.42. Harold often *223 purchased property and held mortgages in the names of "straw men." The "straw men" used were his employees or his wife, Jane. During the investigation Harold submitted a net worth statement. He later admitted that he had overstated the cost of mortgages receivable as of December 31, 1947, by about $30,000. He also stated that his mortgage cards had been destroyed when the agents wished to re-examine them. Some of the cards were later seen in the office of Harold's accountant. In 1939 and in each of the years 1942 to 1950, inclusive, Harold received a substantial amount of income in excess of the amount reported. There was at least some deficiency in each of those years which was due to fraud with intent to evade tax, and the returns filed for the years 1942 to 1947, inclusive, were false or fraudulent with intent to evade tax. Harold organized the Oak Leaf Trailer Park, Inc. on August 1, 1952. The stock was issued to Jane, 240 shares, Harold, 9 shares, and Harold's secretary, 1 share. Harold conveyed to the corporation a part of a lot having a value of $3,000 by deed dated August 12, 1952 and recorded August 22, 1952. By deeds dated September 3, 1952, and recorded September 5, 1952, he *224 conveyed to the corporation additional lots and parts of lots having a total value of $1,500. Harold and Jane by deed dated October 11, 1952, and recorded October 13, 1952, conveyed to the corporation 6.4117 acres of land with improvements which included the Oak Leaf Tavern and a gasoline station. This property had a value of $61,600 on October 13, 1952, and was subject to a mortgage in the amount of $11,000, leaving a net value of $50,600. By deed recorded October 13, 1952, Harold conveyed to the corporation a lot having a value of $1,000. On November 12, 1952, Harold for no consideration assigned to Jane, as trustee for their son, Gary, first mortgages having an aggregate balance due of $5,000 and second mortgages having an aggreate balance due of $25,000. The assignment was recorded. Harold conveyed to Virginia Ellison on March 16, 1953 for no consideration certain real property. The property had a value of $13,500 and was subject to a mortgage in the amount of $12,000, leaving a net value of $1,500. The net assets or net worth of Harold and Jane (exclusive of the tax liability involved in these proceedings) at the times of the above transfers were as follows: August 22, 1952
$ 203,334.44
September 5, 1952
220,913.83
October 13, 1952
214,880.47
November 12, 1952
161,992.09
March 16, 1953
88,397.41
*225 Harold, more than three years but less than five years after the last day for filing returns for 1946 and 1947, and Harold and Jane less than three years after the last day for filing returns for 1948, 1949, and 1950, consented in writing to the extension of the statute of limitations as to those years until after July 20, 1953, which was the date the statutory notice of definicency was mailed. Opinion Respondent determined deficiencies on the basis of increases in net worth and expenditures for each of the taxable years 1939 to 1950, inclusive. He also determined additions to tax for fraud in each of those years under section 293(b) of the Internal Revenue Code of 1939. [2]
Petitioners have not attempted to overcome the presumptive correctness of respondent's determination as to the amount of deficiencies; *226 and, therefore, the deficiencies, except for Jane's liability in the years 1948 and 1949, are sustained. Petitioners do contest the additions to tax for fraud and also contend that the assessment of the tax for the years 1940 to 1947, inclusive, is barred by the statute of limitations. To suspend the running of the statute of limitations on the years 1940 to 1947, inclusive, respondent has the burden of proving by clear and convincing evidence that the returns filed by Harold for those years were false and fraudulent with intent to evade tax within the purview of section 276(a), Internal Revenue Code of 1939. [3] Furthermore, in order to sustain the additions to tax for fraud, respondent must prove by like evidence that at least part of the deficiency in each of the years 1939 to 1950, inclusive, was due to fraud with intent to evade tax within the purview of section 293(b). Bryan v. Commissioner (C.A. 5), 209 Fed. (2d) 822. As both issues turn on the same evidence, they will be considered together. On the basis of Harold's own net worth statement and admissions, respondent proved that Harold had a net worth of at least $200,000 on December 31, 1947. During the years *227 1939 to 1947, inclusive, the sum of his personal nondeductible living expenses and taxes paid exceeded the total amount of net income reported in those years by about $10,000. Thus, Harold failed to report in those nine years a total of at least $210,000 less the amount of his net worth on December 31, 1938. Petitioners contend that respondent has not established the amount of the beginning net worth. It is true that there is no direct evidence on this point. However, Harold filed a petition in bankruptcy in 1934 and was discharged in April 1935. His widow testified that during the next three years he was forced to borrow frequently, giving short-term mortgages on their home, he had difficulty operating his business for lack of money, and there was little spare cash around the house. Respondent could have offered evidence as to the amount of tax Harold reported due in 1935, *228 1936, 1937, and 1938, and possibly from a bank or other lending institution he could have obtained a copy of a net worth statement by Harold during those years. However, even without this additional evidence, we think it is valid to assume on the basis of the evidence presented that Harold's net worth was not substantial on December 31, 1938. Even if his net worth was as much as $30,000 at that time, which is highly unlikely, there would still be a failure to report an average of $20,000 per year during the next nine years. Petitioners further argue that respondent did not establish the amount of net income reported by Harold in 1940, 1941, 1942, and 1943 by merely proving the amount of tax reported as due in those years. We disagree. Knowing the number of exemptions, the amount of net income can normally be estimated with reasonable accuracy on the basis of the amount of tax due. There is no indication that there were any unusual factors present in the instant case which would affect this estimate. Petitioners next contend that respondent has failed to prove fraud as to each taxable year. To prove fraud respondent relies primarily upon a substantial and consistent understatement *229 of net income. This has often been held to be clear and convincing evidence of fraud. Hoefle v. Commissioner (C.A. 6), 114 Fed. (2d) 713, affirming 37 B.T.A. 1334; Rogers v. Commissioner (C.A. 6), 111 Fed. (2d) 987, affirming 38 B.T.A. 16; Louis Halle, 7 T.C. 245, affd. (C.A. 2), 175 Fed. (2d) 500, certiorari denied 338 U.S. 949, See also Holland v. United States, 348 U.S. 121. However, respondent cannot sustain his burden by merely proving a failure to report a substantial amount of income over a period of years. At least for the purpose of section 293(b) he must prove a failure to report income subject to tax in each taxable year. The same proof is required to bar the running of the statute of limitations unless the returns filed are otherwise shown to be fraudulent. Respondent has shown by clear and convincing evidence that Harold failed to report a substantial amount of income from interest on automobile loans in 1947 and from the construction and sale of houses in 1950. In each of those years inclusion of the amounts omitted in net income results in a deficiency. The stipulated *230 amounts of liabilities, bank balances, nondeductible living expenses, and investments in automobiles and certain real estate, and the proven amount of income taxes paid indicated failure to report a substantial amount of income in each of the years 1939, 1942, 1943, 1944, 1945, and 1946. These items prove that unless Harold received gifts or his total investment in other assets declined in a particular year, Harold's income was at least $5,052.83 in 1939 when he failed to file a return and $19,462.61 in 1943 when he reported no tax due, and his net income was understated by at least $8,206.90, $13,054.85, $2,413.40, and $45,212.82 in 1942, 1944, 1945, and 1946, respectively. This, in our opinion is clear and convincing evidence that Harold failed to report a substantial amount of income resulting in deficiencies in each of those years when considered in connection with Harold's proven failure to report a total of approximately $180,000 to $200,000 in net income during the period from 1939 to 1947, inclusive, and in the absence of any indication that Harold received any gifts or that his total investment in other assets declined. Cf. Holland v. United States, supra. *231 In 1948 and 1949 Harold reported net operating losses of $10,519.33 and $9,020.25, respectively. However, the stipulated items of net worth and expenditures and the proven amounts receivable on loans to Granville Lewis and income taxes paid establish that Harold's net income was at least $23,936.93 in 1948 and $6,538.43 in 1949 barring a net decrease in his investment in other assets or the receipts of gifts. Where there is no indication that there was a net decline in his investment in other assets or that he received any gifts, we think the above is clear and convincing evidence that Harold's net income was sufficient to create liability for at least some tax in each of those years. Cf. Holland v. United States, supra. Harold was an able and successful businessman. Over the twelve-year period ending December 31, 1950 he was shown to have realized net income in excess of $200,000. He reported a total net income of $12,631.81 during that period. He failed to keep adequate records, caused properties and mortgages acquired to be placed in the name of "straw men," and made false and misleading statements to the agents investigating his returns. In light of these facts *232 to attribute to oversight or error his failure to report substantial amounts of income in the year 1939 and in each of the years 1942 to 1950, inclusive, would overtax credulity. Respondent, in our opinion has proven by clear and convincing evidence that at least part of the deficiency in each of those years was due to fraud with intent to evade tax requiring the assessment of a 50 per cent addition to tax under section 293(b). He has also proved by like evidence that the returns filed for each of the years 1942 to 1947, inclusive, were false or fraudulent with intent to evade tax which, under section 276(a), barred the running of the statute of limitations on those years. The remaining years involved are 1940 and 1941. Respondent has not shown that the returns filed for those years were false or fraudulent, and therefore the assessment of the tax for those years is barred by the statute of limitions. Respondent determined by the net worth method that there was an understatement of income in the amounts of $8,651.47 and $7,096.88 in 1940 and 1941, respectively. However, his determination depends primarily upon an increase in Harold's investment in certain assets which is not established *233 by competent evidence. If the unproven increases are disregarded, the net income computed using the net worth method is less than the estimated amount reported in 1940 and only about $270 greater than the estimated amount reported in 1941. As the net income reported in 1941 cannot be determined precisely and the discrepancy is small, this difference in 1941 does not indicate that the return filed was fraudulent. The next question is whether Jane filed joint returns with Harold in 1948 and 1949 which would render her jointly and severally liable for the deficiencies and additions to tax determined for those years. This depends upon the intent of the parties which must be gleaned from the facts and circumstances surrounding the filing of the returns. The returns filed for those years were, in form, joint returns. However, the 1948 return does not purport to bear Jane's signature, and her name was signed to the 1949 return by Harold's secretary without Jane's knowledge or authorization. The returns do not include any income attributable to Jane, and she had no income other than a few small prizes won by entering contests. Furthermore, she had no knowledge of the filing of the returns *234 and they were filed without her consent. The fact that she joined in signing the "consents" extending the statute of limitations as to those years is immaterial. This is a normal action for anyone whose tax liability is questioned. Therefore, for the reasons stated, we have found that Jane did not intend to file and did not in fact file a joint return with Harold in either 1948 or 1949. Alma Helfrich, 25 T.C. - (filed December 7, 1955). Joseph Carroro, 29 B.T.A. 646; Myrna S. Howell, 10 T.C. 859, affd. (C.A. 6), 175 Fed. (2d) 240; and Hyman B. Stone, 22 T.C. 893, appeal dismissed (C.A. 1), cited by respondent, are distinguishable on the facts. In those cases the returns filed either include income attributable to the wife or she was otherwise shown to have intended to file a joint return. The only questions raised in the transferee proceedings relate to the tax liability of the primary taxpayers, Harold and Jane. The above holdings, therefore, are dispositive of those issues. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Harold J. Ringler, Deceased, Jane R. Ringler, Executrix, and Jane R. Ringler, Individually, Docket No. 51025; Jane R. Ringler, Trustee for Gary L. Ringler, Minor, Docket No. 51341; Oak Leaf Trailer Park, Inc., Docket Nos. 51356-7; Virginia L. Ellison, Docket Nos. 51396-7. ↩
*. Caption and footnote n1 were amended by an official Order of the Tax Court, dated July 10, 1956, and signed by Judge Bruce.↩
*. For 1943 the tax is an income and victory tax.↩
*. Estimated by respondent's agents on the basis of the tax reported as due in each of the years 1940, 1941, 1942, and 1943 in the amounts of $8.80, $48.08, $37.15, and $0.00, respectively. ** This amount represents income for the year in the amount of $9,814.22 less a net operating loss carry-over from 1949 in the amount of $8,106.69.↩
*. Only $382.9 is allocable to the cost of the land. ** This includes $13,000 for mortgages payable as is shown on respondent's net worth computation, rather than $1,300 as is shown in the stipulation. The use of the larger amount by the respondent in computing the deficiency was in the petitioners' favor.↩
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
3. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be gegun without assessment, at any time. * * *↩