Helen E. Groves v. Commissioner.
Groves v. Commissioner
Docket No. 58595.
United States Tax Court
T.C. Memo 1957-196; 1957 Tax Ct. Memo LEXIS 55; 16 T.C.M. (CCH) 887; T.C.M. (RIA) 57196; October 17, 1957
*55 Joint returns: Presumption: Signature not that of wife. - Where a husband files a joint return without objection of the wife, who fails to file a separate return, there is a presumption that the joint return was filed with the tacit consent of the wife. However, a wife rebutted this presumption by showing that the signature on the return filed by her husband was not hers, that she had not known the return was filed because she was separated from her husband during the period before his death, and that she had not filed a separate return for the same period because she had mistakenly believed that the filing of a withholding tax return by her employer had been sufficient. Morris Fedder, Esq., and Harry Adelberg, Esq., 10 Light Street, Baltimore, Md., for the petitioner. William Schwerdtfeger, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Petitioner's former name was Helen E. O'Connor. She was the wife of John E. O'Connor who died on January 20, 1950. By notice addressed to petitioner and dated March 28, 1955, respondent determined deficiencies in income tax and additions to tax under section 293(b) of the Internal Revenue Code of *56 1939 against petitioner and her deceased husband for the years 1947 and 1948, as follows: Year
Deficiency
Addition to Tax
1947
$15,344.28
$ 7,672.14
1948
13,972.34
6,986.17
Total
$29,316.62
$14,658.31 No petition was filed by or on behalf of the estate of John E. O'Connor. Petitioner alleges that respondent erred in determining that she was jointly liable for the taxes here involved, in determining the 50 per cent additions to tax under the provisions of section 293(b), and in failing to recognize that determinations of the deficiencies for the taxable years were barred by the statute of limitations. A part of the facts was stipulated but, in addition, the testimony of several witnesses was adduced at the hearing herein. Findings of Fact A stipulation of facts was filed herein by the parties, and we find the facts to be as stipulated. Petitioner lives in Baltimore, Maryland. She married John E. O'Connor in 1936 and remained legally his wife until his death in 1950, although their married life was a troubled one and they were separated in 1943 and 1944, and again during the taxable years, the final separation having occurred in October 1946. On *57 November 15, 1949, O'Connor filed suit for divorce against petitioner, but died before the case was heard. Petitioner's present married name is Helen E. Groves. O'Connor was an equal partner with Bernard J. Kenney in two partnerships, one of which, known as Eastern Novelty Company, was engaged in the vending machine business, and the other, known as Corner Cafe, operated a tavern. In addition, O'Connor was engaged in the business of "bookmaking." Petitioner was employed by the Western Electric Company during the years 1944 to 1948, inclusive. For 13 years prior thereto she was employed as a waitress. From her savings as a waitress she purchased a home on Sheldon Avenue in Baltimore. In 1943 she sold this home and purchased a 2-apartment house constructed of concrete blocks and shingles on Walther Boulevard in Baltimore. At that time she was separated from her husband. The purchase price of the home was $10,000, of which petitioner paid $7,500 and her sister paid $2,500. It was anticipated that the sister would live in the home with her, but in the following year, 1944, petitioner resumed living with her husband and the plan of the sister to live with her was abandoned. The title *58 to this property remained in the name of petitioner and her sister. In addition, petitioner had cash savings and one bank account during the taxable years with which she paid her living expenses. O'Connor, with the exception of buying a stove for the house and paying the telephone bills, gave her no support during the taxable years, although he used the basement of the house during part of these years in connection with his bookmaking business and visted her once a month. During all of the time, including the taxable years, O'Connor had a key to the house and could enter it at any time. O'Connor filed separate individual income tax returns for the years 1944, 1945, and 1946. As a result of investigations made by a revenue agent, O'Connor, on March 7, 1948, consented to the assessment and collection of deficiencies in tax and penalties for the years 1944, 1945, and 1946 in the total amounts of $15,982.35 and $7,476.86, respectively. O'Connor told petitioner during the taxable years that he was losing money. Petitioner filed no income tax returns until 1951 when she opened her own business. During the years she was employed by the Western Electric Company withholding tax returns *59 were made by that company on account of the salary paid to petitioner for the years 1944 to 1948, inclusive. In 1947 her salary was $1,852.92, and the amount of Federal income tax withheld was $146.50. In 1948 she was only employed during part of the time, and her salary was $235.24 and the tax withheld was $35.28. Petitioner believed that the filing of withholding tax returns by her employer relieved her of the necessity of filing individual tax returns. During the taxable years and prior thereto petitioner contributed some toward the support of her mother, Mrs. Lottie King. During one of the taxable years the upstairs apartment in the Walther Boulevard house was rented. The property occupied by the Corner Cafe was a 2-story brick building which contained two apartments rented by O'Connor, although the title to this property was in the name of either his sister or his brother. The 1947 real property taxes on the Walther Boulevard property in the amount of $217.26 were paid by petitioner on March 26, 1947. The 1948 real property taxes upon this property in the amount of $210.25 were paid by petitioner on February 18, 1948. The receipted property tax bills and petitioner's copies *60 of her withholding tax returns were kept by petitioner on her desk in the Walther Boulevard home. In 1947 petitioner consulted a Dr. Cotter with regard to medical treatments, and her bill for such treatments was in the sum of $46. Timely Federal income tax returns for the years 1947 and 1948 were filed with the then collector of internal revenue at Baltimore, Maryland, in the names of "John and Helen O'Connor." These are shown to have been prepared by William C. Blumberg from information "received by taxpayer" (return for 1948) and from information "given by taxpayer" (return for 1947). These returns were signed by John E. O'Connor. The name "Helen E. O'Connor" appears as a signature on each of these returns but is in a different handwriting on each, and in neither case was the signature of petitioner. Each return indicated that the wife was not making a separate return. The return for 1947 reported receipt of income from Corner Cafe and Eastern Novelty Company in the sum of $1,304.94, rents from a "2 st bk. house" in the net amount of $455, and wages from Western Electric Company in the amount of $1,852.92. Among the deductions claimed was one for property tax in the amount *61 of $210.25 and one for medical expenses paid to Dr. Cotter in the sum of $80. No withholding tax return was attached to this return for 1947, but the statement was made therein that the amount of $146.50 had been withheld from wages. A claim for dependency exemption was made on that return and the return for 1948 on account of petitioner's mother. The return for 1948 reported receipt of income from Corner Cafe and Eastern Novelty Company in the amount of $3,835.63, and wages from Western Electric Company in the amount of $235.24. Among deductions claimed was one for property tax in the amount of $205.30. This return showed a withholding tax paid of $35.28 and a Form W-2 to this effect was attached to the return. The wages from Western Electric Company and the withholding taxes paid, as shown in each return, are those of petitioner. Petitioner never authorized or directed any person to sign or file these returns on her behalf. She knew nothing concerning these returns until they were shown to her by a revenue agent in 1953. She never knew or talked with William C. Blumberg, who signed these returns as the person preparing them. The returns here in question were not joint returns *62 binding upon petitioner, but were the separate returns of John E. O'Connor. Opinion KERN, Judge: The primary issue in this case is whether the returns for the taxable years, which were not signed by petitioner, were joint returns rendering petitioner jointly and severally liable for deficiencies and so-called fraud penalties determined by respondent on account of the omission therefrom of large amounts of income of petitioner's husband. During the taxable years petitioner was separated from her husband who gave her practically no support. In prior years the husband had filed separate returns. Petitioner had filed no returns, being under the mistaken impression that the filing by her employer of withholding tax returns was sufficient. The returns for the taxable years purported to be the returns of "John and Helen O'Connor" but were signed only by John O'Connor. Petitioner's name appears on the line designated for the "Signature of taxpayer's wife * * * if this is a joint return," but it was not signed by petitioner and is signed on each in a different handwriting, neither of which is that of petitioner. Upon both, the signature of the person preparing the returns is that of Wm. *63 C. Blumberg, who stated that the returns were made from information furnished by taxpayer. Petitioner did not know and has never talked with Blumberg. She did not know that these returns had been filed until they were shown to her by a revenue agent in 1953. At the trial herein she testified at length to the effect that she had never authorized or directed any person to file these returns on her behalf and knew nothing of them until 1953. From October 1946 until her husband's death in 1950 she was separated from her husband and knew little about his finances, being under the impression that he was not making any money. It is true that "where a husband filed a joint return, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife," Myrna S. Howell, 10 T.C. 859, 866, affd. 175 Fed. (2d) 240. However, this presumption, arising from respondent's determination of deficiencies, may be rebutted. See Hyman B. Stone, 22 T.C. 893, 901. In the instant case it is our opinion that there is ample evidence to rebut this presumption. As in Alma Helfrich, 25 T.C. 404, *64 petitioner did not authorize anyone to sign her name to the returns; she did not know the returns had been filed; she did not participate in their preparation; and the first time she saw them was when they were shown to her by a revenue agent in 1953. As in that case, the inclusion of some of her income in the returns, without more, is not indicative of an intention on her part to file a joint return, and such an intent is a prerequisite to the establishment of joint liability on the part of the spouse who has not signed a return which purports to be joint. Myrtle O. Calhoun, 23 T.C. 4. The result in this case is controlled by Alma Helfrich, supra. Respondent mistakenly relies on Muriel Heim, 27 T.C. 270. That case is distinguishable on its facts. Here, unlike the Heim case, petitioner and her husband were not living together as husband and wife; petitioner did not know that returns of any kind were being prepared and had never filed any returns for prior years, joint or separate; she did not talk with and did not even know the person preparing the returns; she did not know and had no reason to know that "immediately after the acts were performed" *65 returns upon which her name was signed had been filed; and she took no action indicative in any way that she acquiesced in or gave her tacit consent to the filing of joint returns for the taxable years. It is not shown that any benefits of the joint returns were accepted by her. Petitioner should have filed a separate return for at least the year 1947. However, respondent does not claim that petitioner is liable for any deficiency by reason of unreported separate income realized by her in that year or any other year, nor does the record lead us to conclude that petitioner would have any separate tax liability in excess of the amount of tax withheld and returned by her employer. In any event, her failure to file a separate return of her small income does not, in fairness, justify as a penalty for that failure the payment by her of taxes and additions to taxes in the total amount of over $40,000, arising from unreported income of her estranged husband, and, in view of our conclusion that she did not sign or tacitly acquiesce in any joint return or intend that any return filed should be one under which she was jointly obligated, we are not forced to a conclusion which would have this *66 result. Our conclusion that the returns here in question were not those of petitioner makes it unnecessary to consider the issues having to do with the alleged fraud of John E. O'Connor, and we have accordingly made no findings thereon. Decision will be entered for petitioner.