**INTERLOCHEN COMPANY, Inc.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 7149.

United States Court of Appeals
Fourth Circuit.

Argued April 16, 1956.
Decided April 24, 1956.

Neville Holcombe, Spartanburg, S. C., and Bennette E. Geer, Jr. (Holcombe & Bomar, Spartanburg, S. C., on the brief), for petitioner.

L. W. Post, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

This is an appeal from the decision of the Tax Court, which sustained a deficiency assessment against Interlochen Company, Inc., the taxpayer, in income tax of $17,470.33 for the year 1945. The taxpayer sold certain corporate stock in 1945, claiming on its tax return the same basis as the stock had in the hands of its transferor. on the theory that it had been acquired by gift. The Commissioner asserted a deficiency on the ground that the stock had been acquired by purchase, and that taxpayer's basis was the amount that it actually paid for the stock. Two questions are involved. (1) Is the taxpayer entitled to compute its tax on the theory that the stock was acquired by gift? (2) If the stock was acquired by gift, has the taxpayer carried its burden of proof of establishing the donor's actual cost to be greater than the basic cost of $46,825 allowed by the Commissioner? If either question is answered in the negative, the deficiency assessment is proper.

The Commissioner answered the first question in the negative, making it unnecessary to decide the second question. The Tax Court answered the second question in the negative, making it unnecessary to decide the first question. We answer both questions in the negative. The decision of the Tax Court must, therefore, be affirmed.

Petitioner and taxpayer is a North Carolina corporation, incorporated in 1929. It was organized through the efforts of John A. Law, Sr. Its stockholders, officers and directors were his sons and daughters, except a brother was a director and held one of the 61 shares of stock. John A. Law, Jr. was president. The incorporation of taxpayer was rushed through in the last month of 1929 mainly so Law, Sr., could sell stock to it, fix a loss thereon, and take a tax credit therefor on his own income tax return for 1929. He also wished to convey certain real estate to the corporation.

The first meetings of the stockholders and directors of the taxpayer were held on June 28, 1930. Law, Sr. was present. at the meeting and offered to convey to petitioner certain real estate located in North Carolina for 61 shares of petitioner's no-par common stock with the understanding that the 61 shares were to be issued to the original incorporators in full payment of their subscriptions. The directors accepted the offer and directed the issuance of 61 shares of petitioner's stock to the incorporators. Petitioner's minute book does not show any further meeting of its stockholders or directors after June 28, 1930, until December 26, 1942.

In 1945 petitioner sold 650 shares of Saxon Mills stock for $117,000. In its 1945 return it reported the sale of this stock for $117,000, showed a cost basis of $123,500, and claimed a capital loss on the sale of $6,500. It reported no capital gains and no capital transactions other than this sale. Petitioner had acquired this stock in 1937 in a tax-free exchange for 650 shares of Chesnee Mills stock. It had acquired the 650 shares of Chesnee Mills stock under the following circumstances:

On December 26, 1929, Law, Sr. transferred to his brother's brokerage firm, A. M. Law & Company, 500 shares of Chesnee Mills stock for $43,470, and on the same day Law & Company transferred 500 shares of the same stock to petitioner for $43,575. On December 31, 1929, Law, Sr., deposited $43,575 to petitioner's account at the Central National Bank, Spartanburg, South Carolina. Law, Sr., was president of that bank. Petitioner issued its check, dated December 31, 1929, in the amount of $43,575 payable to A. M. Law & Company, drawn on the Central National Bank, signed by John A. Law, Jr., in payment for the 500 shares of Chesnee Mills stock. No consideration was paid to Law, Sr., for this deposit made to petitioner's account. The stock book records of Chesnee Mills show that 500 shares of its stock were transferred on

December 30, 1929 from Law, Sr., to petitioner and that such stock was never issued to Law & Company.

On December 30, 1931, petitioner purchased 100 shares of Chesnee Mills stock with $2,500 furnished to it by Law, Sr. And on December 31, 1932, petitioner purchased 50 shares of Chesnee Mills stock with $750 furnished to it by Law, Sr. In each instance the stock was originally owned by Law, Sr., transferred to Law & Company, and then to petitioner in exactly the same manner as the 500 share lot was acquired. In the three transactions 650 shares of Chesnee Mills stock were purchased with money furnished by Law, Sr., in the amount of $46,825. In each instance Law, Sr., deposited the necessary money in the bank to petitioner's account and with this money petitioner issued its checks to Law & Company in payment for the stock.

These deposits made to petitioner's accounts by Law, Sr., were pursuant to an understanding between him and John A. Law, Jr., that the monies would be used by petitioner to purchase the Chesnee Mills stock. Petitioner had no cash funds, except approximately $97 on deposit in the Spartan Savings Bank in 1932, other than the funds deposited by Law, Sr., with which it could have acquired the 650 shares of Chesnee Mills stock. Law, Sr., was the president and active operating head of Chesnee Mills from 1912 until 1937, when it merged with Saxon Mills. After Chesnee Mills merged with Saxon Mills, Law, Sr., became the president and active operating head of Saxon Mills.

According to the stock book records of Chesnee Mills, 600 of the 650 shares of Chesnee Mills stock were transferred to the name of Law, Sr., on September 13, 1919, and 5 days prior thereto, on September 8, 1919, the 600 shares had been transferred from Blair & Company to the names of the children of Law, Sr. During 1919, his children were minors of ages 8 to 18 years and did not know that any such stock had been transferred

to their names. Law, Sr., acquired 20 of the 650 shares of Chesnee Mills stock from J. S. Burnett on April 2, 1924, and acquired 30 of the 650 shares of Chesnee Mills stock from Fisher C. Bailey on August 17, 1926. Records are not available to show the price, if any, at which he acquired the 600 shares of Chesnee Mills stock or the 20 shares of Chesnee Mills stock from J. S. Burnett. Records of Law & Company disclose that Law, Sr., acquired 30 shares of Chesnee Mills stock on August 17, 1926, from Fisher C. Bailey at $136 per share. Quotations from two stockholders show the bid and asked prices for Chesnee Mills stock on April 2, 1924 to be $150 bid, $165 asked, and $135 bid and $145 asked.

Law, Sr., died in 1950. On his income tax returns for 1929, 1931 and 1932, he reported sales of Chesnee Mills stock, reported bases of $190 per share for the entire 650 shares, and claimed capital losses from the transactions of $51,635, $16,525 and $8,756.25, respectively. The deductions for the 1929 and 1931 losses were disallowed by the Commissioner on the grounds that the transactions did not give rise to allowable deductions. Law, Sr., filed a proceeding with the United States Board of Tax Appeals pertaining to the taxable years 1929 and 1931, and presented an issue as to whether he was entitled to deduct the losses reported from sales to petitioner of Chesnee Mills stock. An issue was also raised concerning the expiration of the statute of limitations on assessment of the deficiencies. The Commissioner had determined, against Law, Sr., deficiencies in tax of $7,972.22 and penalties of $4,066.24 for 1929, and deficiencies in tax of $172.26 and penalties of $86.13 for 1931. This proceeding was disposed of by stipulation of the parties whereby it was stipulated that a deficiency of $500 existed for 1929 and $172.26 for 1931 and that no penalties were due for either year. Law, Sr., waived any restrictions on the assessment and collection of the deficiencies, and a decision in accordance with the

stipulation was entered by the United States Board of Tax Appeals on March 10, 1938.

■ The Commissioner determined that in 1945 petitioner realized a capital gain of $70,175 from the sale of the Saxon Mills stock, using as the basis of the stock the prices at which petitioner acquired the 650 shares of Chesnee Mills stock in 1929, 1931, and 1932. The Commissioner held that the taxpayer was not entitled to compute its tax on the theory that the stock was acquired by gift, but that the transactions must now be treated as sales, just as Law, Sr., and the petitioner had treated them in 1929. If treated as sales the established sale price of $117,000, less the established cost of $46,825, leaves a capital gain of $70,175, upon which the Commissioner held that there was a deficiency in income tax of $17,470.33 for the calendar year 1945.

We think there is ample evidence in the record to support the finding of the Commissioner. The Commissioner's finding is strongly fortified by the facts that the transactions were purposely given the form and appearance of sales from Law, Sr., to the taxpayer-petitioner; that Law, Sr., actually reported them as sales and claimed consequent losses in his income tax returns for 1929, 1931 and 1932; and the Commissioner eventually allowed him a very substantial part of the losses claimed for 1929. Law, Sr., furnished the money to petitioner with which petitioner purchased the stock. Both actively participated in the plan to cause the transactions to appear as sales instead of gifts.

■ At the time these transactions occurred the law was not well settled as to whether transactions of this type could be treated as sales with consequent deductible losses. Prior to 1934 there were cases where the loss was allowed, Madeira v. Commissioner, 3 Cir., 98 F.2d 556, and cases where it was not. Manning v. Gagne, 1 Cir., 108 F.2d 718. It was not until the passage of Section 24(a) (6) of the Revenue Act of 1934, c. 277, 48 Stat. 680, now carried into the 1939 Code as Section 24(b), 26 U.S.C.A. § 24(b) thereof that losses were clearly prohibited in cases of this character. See Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; McWilliams v. Commissioner, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750; Commissioner of Internal Revenue v. Kohn, 4 Cir., 158 F.2d 32; Commissioner of Internal Revenue v. Whitney, 2 Cir., 169 F.2d 562, certiorari denied 335 U.S. 892, 69 S.Ct. 249, 93 L.Ed. 429. Therefore, it could not be said with certainty that transactions of this type could not properly have been treated as sales with consequent deductible losses for years prior to 1934. Both the transferor and transferee treated the transactions as sales, and Law, Sr., took that position in his income tax returns, and was finally allowed a substantial loss on the 1929 transfer. Under these circumstances the transactions should not now be treated as gifts with consequent carry-over of the transferor's basis for the purpose of establishing a further capital loss in this proceeding.

■ While it is true that the Commissioner or the courts may look through the form of a transaction to the substance thereof, in a situation like this the choice of classifying the transaction does not lie with the taxpayer. See Gray v. Powell, 314 U.S. 402, 414, 62 S.Ct. 326, 334, 86 L.Ed. 301, where the court said: "The choice of disregarding a deliberately chosen arrangement for conducting business affairs does not lie with the creator of the plan. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406."

■ It is not necessary to enter into a discussion of estoppel. This case is analagous to Orange Securities Corp. v. Commissioner, 5 Cir., 131 F.2d 662, where the court held there is a duty of consistency in cases of this character without regard to whether there was a technical estoppel. See also Wichita Coca Cola Bottling Co. v. U. S., 5 Cir., 152 F.2d 6; Continental Oil Co. v. Jones, 10 Cir., 177 F.2d 508, certiorari denied 339 U.S. 931, 70 S.Ct. 666, 94 L.Ed. 1351.

In the Wichita case the court said in 152 F.2d at page 8:

"To raise this duty of consistency in tax accounting we do not think a willful misrepresentation need be proven, or all the elements of a technical estoppel. It arises rather from the duty of disclosure which the law puts on the taxpayer, along with the duty of handling his accounting so it will fairly subject his income to taxation."

Here the parties to these transfers (Law, Sr., and the taxpayer) purposely selected the method and mechanics of sale, and they are not now in a position to repudiate that arrangement.

■ Even though the transactions be treated now as gifts, the result is the same, because the taxpayer has been unable to carry the burden of proof of showing that the donor's actual cost was greater than the basic cost of $46,825 allowed by the Commissioner. The Tax Court so held. We believe that its finding is sustained by the evidence.

Section 113(a) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 113(a) (2) provides explicitly for the basis in respect to gifts made after December 31, 1920, as follows:

"If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period prior to the date of the gift as provided in subsection (b) ) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner."

The Tax Court said: "It is stipulated that 'No records are available to show what price, *if any*, (the donor) paid for' the 600 shares of Chesnee Mills stock. (Emphasis added.) Respondent is unable, as are we, to determine precisely what the basis 'would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift.' "

The taxpayer says that the Tax Court should have accepted the representations of Law, Sr., in his 1929, 1931 and 1932 income tax returns that his cost was $190 per share. We disagree. On this subject the Tax Court aptly said:

"The only indication to support the $190 per share which petitioner uses in its computation is that this is the figure employed by the donor when in his 1929 return he sought to (and incidentally did) obtain the benefit of a loss deduction on the 'sale' of the stock to Petitioner. Petitioner now contends that it was not a sale, contrary to the statement on the return, but asks us without further evidence to accept another statement in the return—the $190 basis—as correct. But there is no more assurance that one is dependable than the other. Petitioner, in addition, took the position at one stage of these proceedings that the $190 basis was incorrect as being too low. But on the other hand, we now know from the stipulated facts that the donor was in error, at least when he used the $190 basis for the 30 shares bought in 1926. His stipulated cost for those shares is $136. With that unanswerable evidence of

inaccuracy as to part, we cannot assume that respondent, or we, are required to accept the whole. It is not necessary to accuse the donor of misrepresentation. A mistake of law—or of fact—could have been made in one statement as well as in others. We say only that against the present background the unsupported self-serving declaration of the donor is not sufficient to carry petitioner's burden of proof of the fact of the donor's actual cost."

Taxpayer also relies upon some stipulated facts with reference to other sales and quotations on Chesnee Mills stock in 1919. This evidence does not help the taxpayer because there is no evidence and no finding that Law, Sr., acquired the stock in 1919. Although 600 shares were transferred to Law, Sr., in September, 1919, five days after they had been transferred from Blair & Company (a brokerage firm) to Law, Sr.'s, children, there is no evidence as to the date of acquisition of the shares by Law, Sr., or as to the price, if any, that he paid for them.

Chesnee Mills was incorporated in 1912, at which time 1,000 shares were issued to the brokers, Blair & Company, in whose name the stock remained until 1919. During all this time, and up until 1937, Law, Sr., was the active operating head of the company. No records of the company were produced to show that the brokerage company was, in fact, the owner of the stock. No records or minutes of the company were produced to show what happened back in 1912 when the stock was transferred to the brokers, and there is no other evidence to show the real interest of Blair & Company, if any, in the company. None of the records of Law, Sr., was produced to show that he paid a consideration for the stock which was transferred to him from Blair & Company in 1919, or whether it belonged to him all the time. In the circumstances of this case, as disclosed by the evidence, it is highly probable that the stock belonged to Law, Sr., and that he kept it in the name of Blair & Company for purposes of convenience. It is certainly not uncommon for stock to be held in the names of brokers for convenience. In the absence of evidence to the contrary, and under the particular circumstances of this case, it is a reasonable inference that the 1919 transactions made no real change in the ownership of the stock.

■ The taxpayer had the burden of proof, and the impossibility of proving a material fact does not relieve him of that burden. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991.

■ There is no trouble in establishing the donor's basis for the remaining 50 shares. In this connection the Tax Court found:

"Computing the cost of 30 shares at the price paid, $4,080, and of 20 shares at $3,000, the mean—$150 per share—between $135 low bid and $165 high asked, or a total for the 50 shares of $7,080, there remains to be attributed to the 600 shares $39,745 out of the basis employed by respondent in computing petitioner's gain. This comes to over $66.66 per share, or approximately half of what the record shows the donor actually paid in 1926, 7 years later and at a time when security prices were within a few years of reaching their peak. We cannot say that such treatment is unreasonable; and certainly petitioner has utterly failed to establish an equally convincing alternative. James E. Caldwell & Co., supra."

Adding the $39,745 for the 600 shares to the sum of $7,080 for the 50 shares, the Tax Court found that the total of $46,825 was a fair basis of cost, which was the cost basis allowed by the Commissioner. The result is not arbitrary or unreasonable. Although the evidence was meager, the finding is supported by evidence and certainly we can not say that the finding of the Tax Court was clearly erroneous. It is the duty of the Tax Court to weigh the evidence and

choose from among factual inferences and conclusions those which it considers most reasonable. Commissioner of Internal Revenue v. Scottish American Company, Ltd., 323 U.S. 119, 123, 124, 65 S.Ct. 169, 89 L.Ed. 113; Walling v. General Industries Co., 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088. We think the Tax Court has made the best practical determination that it could on the basis of the record.

The decision of the Tax Court is affirmed.

Affirmed.