Dorothy Sherman v. Commissioner.
Sherman v. Commissioner
Docket No. 3040-63.
United States Tax Court
T.C. Memo 1964-296; 1964 Tax Ct. Memo LEXIS 43; 23 T.C.M. (CCH) 1820; T.C.M. (RIA) 64296; November 13, 1964
Dorothy Sherman, pro se, 190-19B 71st Crescent, Fresh Meadows, Long Island, N. Y. Leon M. Kerry and Joel Kamens, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent *44 has determined a deficiency in petitioner's income tax for the calendar year 1959 in the amount of $2,064.48 and has determined an addition to the tax pursuant to section 6653(a) [1] in the amount of $103.22. The issues before us are whether petitioner (Dorothy) and her deceased husband, Herbert Sherman (Herbert), received unreported income in the amount of $8,505.45 in 1959, and whether petitioner is liable for the so-called "negligence" addition to the tax under section 6653(a). Some of the facts have been stipulated and are so found. Petitioner and Herbert filed their joint income tax return for the calendar year 1959 with the district director of internal revenue, Manhattan, New York, on Form 1040A. The only income shown on said return was the salary which Herbert received from his employer, Cloak, Dress, Drivers and Helpers' Union, Local 102, I.L.G.W.U., in the amount of $7,420. Federal, State and FICA taxes had been withheld from Herbert's wages so that the net amount received by him during the year in issue was $6,187.20. Herbert was manager of the above named Local 102. The only description we *45 have of his job as manager is in the words of one witness as follows: As manager of the union, he was authorized to effect enforcement of the collective agreements between the union and the employer groups. He was the responsible fiscal agent for the union, answerable only to the International. He had the right to hire and fire. He had the right to authorize expenditures of any nature pertaining to union work. He had the right to send agents to coventions. He had the right to send agents to investigate, to the National Labor Board meetings. He had the right to negotiate discharge cases or delegate discharge cases. In other words, his was the job of supervising all the work of the union business agents as well as working himself. * * *
Under the Internal workings, he was the operating head. * * * During the year in issue it was Herbert's practice to submit so-called petty cash vouchers to his employer and to be paid the amount shown on the face of each such voucher. It is not clear whether he received these payments in cash or by check. Petitioner does not contest the fact that such payments were received, but contends that they were in reimbursement of cash payments made *46 by Herbert for ordinary and necessary business expenses of his employer. The great majority of these so-called petty cash vouchers were vague, failed to state the date or the business purpose of the alleged expenditure and failed to state the nature of the expense. Many even failed to state directly that there was an expense, but simply referred to a meeting, conference or event, and noted an amount of money. For example, one such voucher simply states: "$80.00 - Spec. Org. Exp." During the year in issue Herbert submitted, and was paid for, 145 such petty cash vouchers ranging in amount from $2.50 to $160, averaging almost $60 each and totaling $8,533.66. Only five of such vouchers are supported by attached receipts, which 5 receipts total $69.66, and the record contains no other evidence to substantiate that the petty cash payments to Herbert were used as represented thereon. During the year in issue petitioner had no independent income. Herbert's eyesight was failing during such year and consequently he maintained no bank account but gave money to petitioner who maintained the family bank account in her name. During the year in issue such bank account shows 40 deposits, totaling *47 $15,304.54. Also during such year petitioner and/or Herbert borrowed a total of $5,637.89, out of which sum $4,384.32 is included in the above total deposits. Also during such year Herbert had a share and loan account with a credit union to which he made weekly cash payments totaling $3,195 in the purchase of shares and repayment of loans. During the year in issue 219 checks totaling $15,441.27 were drawn on petitioner's bank account. Forty-two of these checks totaling about $3,300 were payable to various finance and loan companies and to one bank and were apparently payments on small loans. One check in the amount of $325 was an "exchange item" with Anne Liverzani, the payee of said check. The remainder of said checks were in payment of personal and family living expenses of petitioner and Herbert Sherman. In addition, during the year in issue Herbert gave petitioner cash for gasoline, groceries and other personal living expenses in varying amounts and averaging about $45 per week. There is no indication in the record that petitioner's bank account was used as a conduit for Herbert's alleged payments for the benefit of his employer or to furnish his personal, out-of-pocket expenses. *48 Herbert maintained no records of money received from his employment or other sources nor did he maintain any records regarding expenses and reimbursements and petitioner kept no records of money she received from Herbert. Herbert and petitioner received unreported taxable income in 1959 in the amount of at least $8,505.45. At least a part of the underpayment of income taxes occasioned by such underreporting was due to negligence or intentional disregard of rules and regulations. Since petitioner made a joint return for such year with Herbert, her liability for such underpayment and for the 5 percent addition thereto under section 6653(a) is joint and several. Section 6013(d)(3) provides in pertinent part, "if a joint return is made, * * * the liability with respect to the tax shall be joint and several." Petitioner signed and "made" a joint return with her husband, Herbert, consequently she is liable for any deficiencies in tax and additions thereto. Hyman B. Stone, 22 T.C. 893; W. L. Kann, 18 T.C. 1032, affd. 210 F. 2d 247 (C.A. 3), certiorari denied 347 U.S. 967. Respondent's determination that Dorothy and Herbert received *49 additional, unreported income in 1959 in the amount of $8,505.45 which was not expended for business purposes is presumptively correct and the burden is on the taxpayer to prove either that such income was not received or to prove allowable deductions which were not shown on the return. Rule 32, Tax Court Rules of Practice.
Dorothy has not satisfied either burden. She does not contest that Herbert in fact received the $8,533.66 shown on the face of the petty cash vouchers but argues that such payments to him were simply reimbursement for monies spent by him on behalf of his employer. The difficulty with Dorothy's position is that she relies entirely on the vouchers themselves to prove that the money was spent for the union's business purposes and, as is indicated by our summary description of them above, they are entirely inadequate in this regard. Some of the vouchers show the names of companies and of individuals, parties to conferences and dealings with Herbert, so we must assume that witnesses to substantiate at least some of the claimed expenses were available, but none were produced. Petitioner protests that if Herbert were alive he could explain everything. But Herbert's *50 death did not shift the burden of proof. As was said in Burnet v. Houston, 283 U.S. 223, 228: We cannot agree that the impossibility of establishing a specific fact, made essential by the statute * * *, justifies a decision for the taxpayer * * *. The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unemforcible claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. * * * and United States v. Bender, 218 F. 2d 869, 871 (C.A. 7): If the defendant had additional costs or expenses that offset the unreported income established by the Government's case, the burden was on him to prove that as part of his defense. * * * This rule is grounded on the realization that it would be virtually impossible for the Government to show the negative fact that a taxpayer had no unreported deductions or exclusions. In such a case the Government, having shown unreported income, is aided by the presumption that the deductions and exclusions listed by a taxpayer in his return are all that exist. * * * See also Interlochen Co., 24 T.C. 1000, *51 affd. 232 F. 2d 873 (C.A. 4). Neither Dorothy nor Herbert maintained any records during the year in issue. Dorothy's position in this case is that the "petty cash" received by Herbert is deductible under section 162(a) as "ordinary and necessary expenses paid * * * in carrying on * * * [a] trade or business, * * *." Section 1.162-17(d)(1)(iv), Income Tax Regs. provides that taxpayers will not ordinarily be called upon to substantiate expense account information (here the petty cash vouchers) unless, "it is determined that the accounting procedures used by the employer for the reporting and substantiation of expenses by employees are not adequate." We have no difficulty in finding and holding that the accounting procedures (petty cash vouchers) so used by the employer in this case were entirely inadequate. Respondent has sought to further demonstrate the inadequacy of the employer's accounting procedures in this case by showing, as to the year in issue, that the deposits made in Dorothy's bank account, and the amounts of money expended by Dorothy and Herbert for personal and family living expenses both far exceeded Herbert's "take home" *52 pay of $6,187.20 plus any excess of proved borrowings over loans repaid and credit union shares purchased. Our findings regarding such deposits, such personal living expenses, and loans made and repaid, support the respondent's position. Dorothy contends that Herbert borrowed more than the $5,637.89 we have found for the year in issue but there is no proof of this. In fact the record shows that Herbert made the same contention before his death when, on being told by a revenue agent that his salary and loans still did not equal the deposits, stated: "It is true. I borrowed money from others, personal friends, relatives." Herbert was then asked to name the claimed creditors, and replied: "This I will not do because I don't want them bothered. I don't want them annoyed. They have helped me and I don't want them involved in any way." We conclude, from the entire record that petitioner has failed her burden and that she and Herbert received unreported taxable income in 1959 in the amount of at least $8,505.45. Respondent has asserted the addition to the tax provided for by section 6653(a). [2] The burden of proving that the imposition of this addition is erroneous is on petitioner. *53 Neither petitioner nor Herbert kept any records to indicate their actual income and alleged business expenses and we have found that Herbert's employer's accounting procedures were inadequate for this purpose. Section 1.162-17(d)(1)(iv), supra, and sections 1.162-17(d)(2)[3] and 1.6001-1(b), [4] Income Tax Regs., require that such records be kept. We think the circumstances here warrant imposition of this addition to the tax. See Hyman B. Stone, supra; David Courtney, 28 T.C. 658; Cleveland Chiropractic College v. Commissioner, 312 F. 2d 203 (C.A. 8), affirming a Memorandum Opinion of this Court, and cf. W. L. Kann, supra.
*54 Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
3. Section 1.162-17(d)(2). The Code contemplates that taxpayers keep such records as will be sufficient to enable the Commissioner to correctly determine income tax liability. Accordingly, it is to the advantage of taxpayers who may be called upon to substantiate expense account information to maintain as adequate and detailed records of travel, transportation, entertainment, and similar business expenses as practical since the burden of proof is upon the taxpayer to show that such expenses were not only paid or incurred but also that they constitute ordinary and necessary business expenses. * * * ↩
4. Section 1.6001-1(b). * * * individuals whose gross income includes salaries, wages, or similar compensation for personal services rendered, are required with respect to such income to keep such records as will enable the district director to determine the correct amount of income subject to the tax. * * *↩