T.C. Memo. 2006-113

UNITED STATES TAX COURT

BENTLEY COURT II LIMITED PARTNERSHIP, B.F. BENTLEY, INC., TAX
MATTERS PARTNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5393-04.                    Filed May 31, 2006.

<u>Nancy Ortmeyer Kuhn</u>, for petitioner.

<u>Wilton A. Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Chief Judge</u>:  On December 29, 2003, respondent
issued a Notice of Final Partnership Administrative Adjustment
(FPAA) to Bentley Court II Limited Partnership (Bentley Court)

for its calendar years 1993, 1994, and 1995.  After concessions,[1] the sole issue for consideration is whether, for its year 1993, Bentley Court must recapture $528,747 of low-income housing credits claimed on its income tax returns for 1990, 1991, and 1992.

## FINDINGS OF FACT[2]

At the time the petition in this case was filed, Bentley Court's principal place of business was in Columbia, South Carolina.

Bentley Court, a limited partnership, was formed in 1989. The general partners were Edwin Lewis II (Lewis) and an entity he controlled.  During 1990 and 1991, Bentley Court constructed an apartment complex in Columbia, South Carolina.  The South Carolina State Housing Finance and Development Authority allocated to the complex low-income housing credits for which Bentley Court claimed Federal income tax low-income housing credits and qualified basis in the following amounts:

---

[1] Petitioner originally alleged error in many of respondent's determinations, one of which was entitlement to low-income housing credits for 1993, 1994, and 1995.  However, petitioner now concedes a portion of the forgiveness of indebtedness income for 1993 and all of the low-income housing credits for 1993, 1994, and 1995.  Respondent concedes the deductibility of the legal fees and the remaining portion of the forgiveness of indebtedness income for 1993 and depreciation deductions for 1993, 1994, and 1995.

[2] The parties' stipulation of facts is incorporated by this reference.

| Year | Credit | Yearend qualified basis |
|------|--------|------------------------|
| 1990 | $28,508 | $223,770 |
| 1991 | 699,780 | 8,372,263 |
| 1992 | 859,543 | 11,537,221 |
| 1993 | 918,155 | |
| 1994 | 926,819 | |
| 1995 | 927,606 | |

On its 1990, 1991, and 1992 returns, Bentley Court reported that it qualified for the credits under the provisions of section 42 but provided no detail about its qualifications for the credits, including the nature of the building or its tenants. Respondent did not examine Bentley Court's 1990, 1991, or 1992 income tax return, and the statutory period for assessment has expired for those years.

On August 25, 2000, Lewis was sentenced to 30 months in prison following his guilty plea to 1 of 22 counts of obstructing and impeding the administration of the internal revenue laws. The count to which Lewis pleaded guilty was as follows:

> Between September 11, 1995, and August 6, 1996, in the District of South Carolina, EDWIN LEWIS II did corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the internal revenue laws by losing and concealing tenant files for * * * [two tenants] of Bentley Court Apartments, which tenant files were to be examined by the Internal Revenue Service as part of an audit of the partnership return for Bentley Court II Limited Partnership for 1993;
>       In violation of Title 26, United States Code, Section 7212(a) and Title 18, United States Code, Section 2.

The remaining 21 counts were similar and related to the one quoted above and concerned allegations that Lewis willfully made

false reports of occupancy beginning in late 1992 through mid-1997. The indictment was filed on June 16, 1998. The 21 related counts were dropped, including allegations that Lewis falsely lowered the income amounts for some tenants and indicated that certain student tenants were not students.

Following an examination of Bentley Court's tax returns, the examining revenue agent concluded that Bentley Court had falsified documents, including changing income amounts and indicating that certain Bentley Court tenants were not students, when, in fact, they were. These falsifications were effected to support Bentley Court's claim for the qualified tax status involving low-income housing credits. A review conducted by the South Carolina State Housing Finance and Development Authority revealed that 90 percent of the tenants in Bentley Court's apartment complex were students. Respondent's examining agent concluded that the apartment complex did not qualify because it did not have qualified tenants, as defined by law. Accordingly, the low-income housing credits were disallowed for Bentley

Court's 1993, 1994, and 1995 years, and one-third[3] of the credits claimed for the 1990, 1991, and 1992 years was recaptured, because the units were not occupied by qualifying tenants.

OPINION

Bentley Court claimed low-income housing credits for its 1990, 1991, and 1992 years, which are now closed for tax purposes. Respondent disallowed the credit for Bentley Court's 1993, 1994, and 1995 years. Respondent also determined that $528,747 of credits claimed for 1990, 1991, and 1992 should be recaptured in the 1993 year. Bentley Court contends that it was not entitled to the credit for 1993, 1994, and 1995, or for the closed years, 1990, 1991, and 1992. Because it was not entitled to the credit in any of the years, Bentley Court contends that the credit cannot be recaptured. The sole issue remaining in dispute is whether Bentley Court must recapture in 1993, the $528,747 in housing credits claimed for 1990, 1991, and 1992.

---

[3] The Notice of Final Partnership Administrative Adjustment for 1993 contained the following schedule showing the computation of the amount of recapture, as follows:

| Tax year | Amount claimed | Rate | Amount recaptured |
|----------|----------------|------|-------------------|
| 12/31/90 | $28,508 | .333 | $9,493 |
| 12/31/91 | 699,780 | .333 | 233,027 |
| 12/31/92 | 859,543 | .333 | 286,228 |
| Total recapture | | | 528,748 |

There is no further explanation or dispute about this computation.

Section 42[4] provides for a low-income housing credit in connection with units or buildings that are part of a low-income housing project. Sec. 42(a), (c)(2). Although section 42 is detailed and complex, generally, to qualify as a low-income housing project, a certain percentage of residential units must be both rent restricted and occupied by tenants whose income is a certain percentage less than the median gross income of the geographical area. Sec. 42(g)(1). With certain limited exceptions not pertinent here, a unit will not qualify as a low-income unit if it is occupied by students. Sec. 42(i)(3)(B)(i), (D).

Section 42 provides for the recapture of "excess" low-income housing credits if at the end of any tax year the qualified basis of a low-income housing project building is less than that building's qualified basis as of the close of the preceding taxable year. Sec. 42(j)(1) and (2). Very generally, qualified basis is the portion of the building's acquisition cost allocable to low-income units. Recapture is therefore triggered if at the end of any year during the compliance period (a period of 15 years beginning usually when the property is placed in service), the number or size of the units set aside for low-income tenants

---

[4] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the periods under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure.

is less than at the close of the preceding year.  Sec. 42(c)(1), (d)(1).

Bentley Court argues that its apartment complex buildings or units failed to qualify as low-income housing units because they were always occupied by the same types of tenants; i.e., predominantly students, and, accordingly, there has been no "recapture event" triggering a recapture of the previously claimed low-income housing credits.  Following that line of reasoning, Bentley Court contends that both the number of units in the apartment complex and the total low-income floor space were zero for the tax year for which respondent determined that recapture of the credit should occur and for the preceding taxable year, producing no difference in the qualified basis between periods and thus no excess or recapture.  Bentley Court argues that respondent is overreaching or maneuvering by determining deficiencies in open years and using the recapture provision to circumvent the closure of years in which a deficiency would or should have been determined.

Respondent offers a two-part response to Bentley Court's position.  Initially, respondent contends that Bentley Court has offered no evidence to show that Bentley Court's apartment complex was not a qualified low-income building during the 1990, 1991, and 1992 tax years.  Alternatively, respondent argues that Bentley Court is bound by a duty of consistency not to take inconsistent

positions; i.e., contending now that it failed to qualify or that qualified basis was zero for 1990, 1991, and 1992, when Bentley Court had previously claimed the credit based on the return-reporting position that a qualified basis existed for those same tax years.

The duty of consistency is an affirmative defense. Cluck v. Commissioner, 105 T.C. 324, 331 n.11 (1995); Janis v. Commissioner, T.C. Memo. 2004-117; Bitker v. Commissioner, T.C. Memo. 2003-209. If respondent interposes an affirmative defense, he bears the burden of proof with respect to that matter. Rule 142(a). Normally, matters of avoidance, such as affirmative defenses and collateral estoppel must be set forth in the pleadings. Rule 39.

Bentley Court's pleadings (petition and amended petition) contained allegations that it was entitled to the low-income housing credits for 1993, 1994, and 1995. After the pleadings were filed and the case was in issue, Bentley Court, during settlement negotiations, conceded that it was not entitled to the low-income housing credits claimed for the 1993, 1994, and 1995 years. Subsequently and shortly before trial, in its pretrial memorandum supplied to the Court and respondent, Bentley Court, for the first time, contended that it had never been entitled to low-income housing credits for the closed tax years 1990, 1991, and 1992 and hence, the recapture provisions did not apply. In

any event, Bentley Court does not contend that respondent untimely raised the affirmative defense. This matter, having been tried by consent of the parties is therefore treated as if it had been raised in the pleadings. Rule 41(b)(1); see also, e.g., <u>Lilley v. Commissioner</u>, T.C. Memo. 1989-602, affd without published opinion 925 F.2d 417 (3d Cir. 1991).

The duty of consistency doctrine is intended to prevent a taxpayer from taking a position in an earlier year and a contrary position in a later year after the limitations period has run on the first year. <u>Lefever v. Commissioner</u>, 103 T.C. 525, 541-542 (1994) (citing <u>Herrington v. Commissioner</u>, 854 F.2d 755 (5th Cir. 1988), affg. <u>Glass v. Commissioner</u>, 87 T.C. 1087 (1986)), supplemented by T.C. Memo. 1995-321, affd. 100 F.3d 778 (10th Cir. 1996). A taxpayer gaining governmental benefits on the basis of a representation or asserted position is thereafter estopped from taking a contrary position in an effort to escape taxes. <u>Id.</u> at 542. A duty of consistency arises where:

> "(1) the taxpayer has made a representation or reported an item for tax purposes in one year,
>
> (2) the Commissioner has acquiesced in or relied on that fact for that year, and
>
> (3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial year." * * * [<u>Id.</u> at 543 (quoting <u>Beltzer v. United States</u>, 495 F.2d 211, 212 (8th Cir. 1974)).]

The duty of consistency has been applied to prevent a taxpayer from denying the accuracy of a previously reported basis in property after the period of limitations has run on assessments, see Cluck v. Commissioner, supra, Beltzer v. United States, supra, and the Commissioner's acquiescence has been determined to exist when a taxpayer's return is accepted as filed, see Lefever v. Commissioner, supra, Beltzer v. United States, supra. The Commissioner's acquiescence does not require examination of the taxpayer's return. See Estate of Letts v. Commissioner, 109 T.C. 290, 300-301 (1997), affd. per curiam without published opinion 212 F.3d 600 (11th Cir. 2000).

Respondent argues that the facts in this case show that all three of the criteria have been met and that Bentley Court should be held to a duty of consistency. Bentley Court contends that the duty of consistency is inapplicable, or if it is, it should be applied to estop respondent from recapturing the credit. We agree with respondent.

Bentley Court construes the following sequence of facts which it believes should result in the application of a duty of consistency against respondent: (1) Bentley Court reported the low-income tax credits in 1990 to 1995, and respondent "disallowed" those credits for all years by criminally prosecuting Lewis; (2) because of the indictments against Lewis, respondent

did not acquiesce to the credits claimed for 1990, 1991, and 1992;

and (3) Bentley Court was compelled to change its initial

representation or claim of credits due to the criminal prosecution

against Lewis.  We conclude that Bentley Court's approach and

perspective regarding the duty of consistency doctrine are

inapposite.

As to the first prong, Bentley Court claimed credits and

reported the existence of qualified basis on its tax returns, as

follows:

| Year | Credit | Yearend qualified basis |
|------|--------|-------------------------|
| 1990 | $28,508 | $223,770 |
| 1991 | 699,780 | 8,372,263 |
| 1992 | 859,543 | 11,537,221 |

The second prong concerns the Commissioner's acquiescence or

reliance on the above-referenced facts reported by Bentley Court.

On that point, Bentley Court contends that respondent did not

acquiesce or rely, as reflected by respondent's criminal

prosecution of Lewis with respect to the concealment of

information or records.  That criminal prosecution, however, does

not relieve Bentley Court of the duty of consistency.[5]  In point of

_____

[5] The rationale underlying the duty of consistency has been
described, as follows:

    In adjusting values the Commissioner in effect
    represents the interests of all other taxpayers who
    must bear what the particular taxpayer unjustly
    escapes.  It is no more right to allow a party to blow
    hot and cold as suits his interests in tax matters than

(continued...)

time, the indictment and criminal proceeding commenced after the normal 3-year period for assessment of the tax for 1992 had expired. Moreover, we note that respondent's examination did not extend back prior to Bentley Court's 1993 tax year. Accordingly, it appears that respondent (during the examination) did not gain access to facts that would have put him on notice that the credit claimed for 1992 was erroneous. Cf. S. Pac. Trans. Corp. v. Commissioner, 75 T.C. 497, 560 (1980), supplemented by 82 T.C. 122 (1984); Davoli v. Commissioner, T.C. Memo. 1994-326. Respondent acquiesced to and relied upon Bentley Court's representations by "accepting" the returns as filed, irrespective of the indictment and conviction of Lewis, Bentley Court's principal officer.

Bentley Court's situation matches the third prong by its change of position with respect to the closed years. Bentley Court first represented that it qualified for low-income housing credits for the years 1990 through 1992, and had the above-described yearend qualified bases. Now that the assessment periods for those years have expired, Bentley Court claims that the previously reported yearend qualified bases were actually

---

[5](...continued)
in other relationships. Whether it be called estoppel, or a duty of consistency, or the fixing of a fact by agreement, the fact fixed for one year ought to remain fixed in all its consequences, unless a more just general settlement is proposed and can be effected. * * * [Alamo Natl. Bank v. Commissioner, 95 F.2d 622, 623 (5th Cir. 1938), affg. 36 B.T.A. 402 (1937).]

zero.  The duty of consistency elements are accordingly satisfied as applied against Bentley Court.

Alternatively, Bentley Court argues that the duty of consistency doctrine does not apply because Bentley Court's mistake was one of law and not fact.  In support of this argument, Bentley Court contends that opinions of Courts of Appeals regarding the duty of consistency doctrine have limited that doctrine to cases involving a mistake of fact.

The appellate courts, however, focus upon whether there was a benefit received based on a taxpayer's representation or misrepresentation.  See, e.g., LeFever v. Commissioner, 100 F.3d 778, 787 (10th Cir. 1996), affg. 103 T.C. 525 (1994); Banks v. Commissioner, 345 F.3d 373, 388 (6th Cir. 2003), affg. in part, revg. in part T.C. Memo. 2001-48, revd. on other issues 543 U.S. 426 (2005).  Bentley Court argues that Lewis made a mistake of law by his misunderstanding of which type of students could qualify as low-income individuals under the statutory language, and that this does not involve a factual issue regarding whether the individuals were students.  See, e.g., Estate of Posner v. Commissioner, T.C. Memo. 2004-112.  This case would normally be appealable to the Court of Appeals for the Fourth Circuit, where the following approach of the Court of Appeals for the Fifth Circuit has been adopted:

> "To raise this duty of consistency in tax accounting we do not think a willful misrepresentation need be proven,

or all the elements of a technical estoppel.  It arises rather from the duty of disclosure which the law puts on the taxpayer, along with the duty of handling his accounting so it will fairly subject his income to taxation." [Interlochen Co. v. Commissioner, 232 F.2d 873, 878 (4th Cir. 1956), affg. 24 T.C. 1000 (1955) (quoting Wichita Coca Cola Bottling Co. v. United States, 152 F.2d 6, 8 (5th Cir. 1945))].

Bentley Court represented on its 1990 through 1992 returns that it qualified for low-income housing credits.  It generally claimed compliance with section 42 and did not provide its reasoning for claiming the credit.  It is obvious from the record we consider that the criminal matter had to do with misrepresentations and/or concealment of facts on Bentley Court's behalf by Lewis.  Accordingly, Bentley Court's "mistake of law" argument has no basis in this record and is not worthy of further consideration.  See Interlochen Co. v. Commissioner, supra. Accordingly, we reject Bentley Court's alternative argument.

Bentley Court has conceded that it does not qualify for low-income housing credits for 1993.  Accordingly, the apartment building's qualified basis was thus zero at the end of 1993.  In addition, Bentley Court is estoped to deny that the 1992 yearend qualified basis was less than $11,537,221.  Because the qualified basis at the end of 1993 was less than the qualified basis at the end of 1992, Bentley Court is subject to recapture in 1993.  See sec. 42(j).

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered
under Rule 155</u>.